Lee S. FONG, Plaintiff-Appellant,

v.

AMERICAN AIRLINES, INC.,
Defendant-Appellee.

No. 78–1137.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1980.

Decided Sept. 3, 1980.

Dennis John Woodruff, San Francisco, Cal., for plaintiff-appellant.

Donald D. Connors, Jr., San Francisco, Cal., argued for defendant-appellee; James L. Meeder, Brobeck, Phleger & Harrison, San Francisco, Cal., on brief.

Before SNEED and SCHROEDER, Circuit Judges, and BLUMENFELD,* District Judge.

SNEED, Circuit Judge:

In this appeal, plaintiff-appellant Fong challenges the district court's summary judgment in favor of defendant-appellee American Airlines. Fong brought this action under 42 U.S.C. § 1981 alleging that American Airlines had discriminated against him on the basis of his race when it discharged him for theft of company property. Fong did not dispute the theft or that it violated an established airline rule of which he was aware, but alleged that the airline's rule requiring discharge for theft was selectively enforced on the basis of race. The trial court found that Fong had failed to show that the discharge was prompted by a racially discriminatory motive and therefore the plaintiff had failed to make out the prima facie case of discrimination required under 42 U.S.C. § 1981. We have jurisdiction of this appeal under 28 U.S.C. §§ 1291 and 1343(4). We affirm.

## I.

### FACTUAL BACKGROUND

There is no genuine dispute regarding the facts of Fong's employment and the events leading up to his discharge. Fong was employed by American Airlines for more than 17 years as an airplane mechanic. On December 28, 1974, at about 5:00 a.m., a Japan Airlines security guard observed Fong entering an American Airlines employee parking lot in an American Airlines vehicle which had its headlights switched off. Fong removed two bundles from the airline vehicle and placed them in the trunk of his own automobile.

At approximately 6:45 a.m., Fong returned to his automobile and was approached by the same security guard who asked what he had earlier placed into his car's trunk and if he would object to showing the security guard the contents of the trunk. Fong replied that he did not object. He opened the trunk and showed the guard two shopping bags containing 30 to 40 cartons of milk packed in ice, sandwiches, a piece of pie, a can of cola, and two tubes of plastic cups.

The security guard thereafter notified Fong's supervisor who instructed Fong to return the items. Fong did this and then went off duty until he commenced his second shift that day at 3:30 p.m. The following day, Sunday, he was told to report to his supervisor on Monday. He did so and was suspended by the general foreman for violating American Airlines Rule 34[1] which makes any theft of American

---

* Honorable M. Joseph Blumenfeld, Senior United States District Judge for the District of Connecticut, sitting by designation.

1. American Airlines Rule 34 provides:
   Dishonesty of any kind in relations with the Company, such as theft or pilferage of Com-

Airlines property punishable by discharge. Fong acknowledges that he was aware of this official airline rule.

Fong subsequently filed a grievance pursuant to his union's collective bargaining agreement asserting that his discharge was not for just cause. The arbitration board, composed of two employer representatives, two employee representatives, and one neutral representative, found otherwise. It concluded that the discharge was for just cause.

Evidence was presented in this proceeding that numerous airline employees had been discharged in the past for violation of Rule 34. Fong contends that those discharges are factually distinguishable from his discharge and that "no employee of American Airlines at the San Francisco Terminal has ever been terminated for the taking of the type of leftover food and items that Mr. Fong took."

Fong, in order to better support his claim of discrimination, restricted his field of inquiry to cases involving (1) only the San Francisco airport, and (2) only the particular type of airline property that he took. In contrast, the record reveals that American Airlines discharged 28 non-Chinese employees for similar thefts at ten other major U.S. airports during the ten years preceding Fong's discharge. The various thefts included items such as an in-flight meal, liquor miniatures, a can of Coke, and a company wrench. The record also shows incidents of discharge at the San Francisco terminal.

Fong also alleges that on-duty airline employees regularly ate food left over from incoming flights. Supervisors did not object to this on-site consumption so long as it occurred on the waiting airplanes or in the employee dining areas. Appellant does not claim that supervisors allowed this or other food to be taken off the premises. Fong alleges that although he was aware of Rule 34, the lax enforcement at the airport led

him to believe it would not be enforced. His complaint claims that the selective enforcement of the rule is due to his national origin.

## II.

### REVIEW OF SUMMARY JUDGMENT

The first issue is whether the district court properly granted the airline's motion for summary judgment. More specifically, the issue is whether the appellant Fong made out a sufficient "prima facie case of discrimination" to create a genuine issue of material fact sufficient to foreclose summary judgment. We hold that he did not.

The Supreme Court, in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), defined what constitutes a prima facie case sufficient to avoid a summary judgment in a case of employment discrimination.

The critical issue before us concerns the order and allocation of proof in a private, non-class action challenging employment discrimination.

. . . .

The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima face case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Id.* at 800–02, 93 S.Ct. at 1823–24. The Supreme Court noted, however, that the facts in Title VII cases will vary and the prima facie proof that is required will not be the same in all cases. In *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396

pany property, the property of other employees or property of others entrusted to the Company, or misrepresentation in obtaining employee benefits or privileges will be grounds for dismissal and where the facts

warrant, prosecution to the fullest extent of the law. Any action constituting a criminal offense, whether committed on duty or off duty, will be grounds for dismissal.

(1977), the Court clarified this issue, stating:

> The importance of *McDonnell Douglas* lies, notin its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence *adequate to create an inference* that an employment decision was based on a discriminatory criterion illegal under the Act.

*Id.* at 358, 97 S.Ct. at 1866 (emphasis added). Although Fong *alleges* that he was treated differently than white employees under the same circumstances, he has offered insufficient evidence to create an inference that this is true.

As already indicated, Fong insists that "[n]o employee at American Airlines' San Francisco Terminal has ever been terminated solely for the taking of valueless leftover food and non-reusable cups except for the appellant although there are innumerable cases of such theft." He fails to consider that he also took a can of cola, an item which is reusable. The record documents numerous incidents of discharge for theft of reusable items such as cans of cola, orange juice, and miniature liquor bottles, and approximately one-half of the employees discharged were Caucasian.

Fong is on solid ground when he asserts that Rule 34 has not been consistently applied, but this does not make out a prima facie case of discrimination. Fong has failed to link this inconsistency with a discriminatory motive. Rather it is linked to whether the food could be reused and the place of consumption. Food that could not be reused was permitted to be consumed on the premises by all races. Taking reusable property from the airline premises is punished when detected, also without regard to race. Fong does not contest, nor could he, that American Airlines has discharged *both* Caucasian and minority employees for this type of offense.

The allegation that Rule 34 is selectively enforced based on race is simply unsupported by the facts. Fong has attempted to place himself in the class of those who consume food that cannot be reused on the premises. The facts place him in the other class, *viz.*, those who take reusable food from the premises. By incorrectly placing himself in the first category, appellant could thereby contend that he was the first employee in 17 years to be discharged for that offense. In reality appellant's case belongs in the second category where numerous employees, Caucasian and others, have been discharged for similar behavior.

■ It follows that the appellant has failed to produce evidence sufficient to support a finding that Caucasians, under similar circumstances, were treated more leniently than plaintiff, warranting an inference of a racially discriminatory motive for the discharge of Mr. Fong. It was not necessary for the trial court to determine a factual dispute to reach this conclusion. These were the facts about which there was no dispute. The trial court correctly granted American Airlines' motion for summary judgment.

### III.

### INADMISSIBLE HEARSAY EVIDENCE

The second issue in this case is whether the district court properly excluded from evidence a hearsay statement. Fong attempted to introduce a statement allegedly made by an American Airlines secretary who purportedly had seen two Caucasian employees under circumstances which might have indicated that they were taking airline property off the premises. The secretary allegedly stated to Fong:

> I can't understand why you [Mr. Fong] got fired. Mr. Hoppler [manager of Maintenance] and I saw Rossi and Stevens [mechanics for American Airlines] leaving a plane a couple of weeks ago with stuff in their jackets. We were pretty certain that they had liquor in their pockets. Mr. Hoppler told their foreman that he better tell the men they better straighten up or they won't be around next year.

This statement does not relate an exciting event, there exists no written record of it,

and it is not corroborated by other evidence. There is no indication that the secretary's memory, narration, perception, and sincerity were more reliable than that of any other hearsay declarant. *United States v. Friedman*, 593 F.2d 109, 119 (9th Cir. 1979). The circumstances surrounding the secretary's statement are not rare or exceptional. Instead they are very routine.

■ The statement was properly excluded from evidence. The secretary's deposition does not support Fong's interpretation of her statement. When deposed she testified that it had never entered her mind to guess what was in their jackets, and that daily she had seen mechanics walking around with jackets bulging as a result of *tools* used on the airplanes. The statement that Fong sought to introduce into evidence is hearsay. It was made out of court and it is being offered to prove the truth of the matter asserted. It does not fall into one of the traditional hearsay exceptions. Consequently, to be admitted, it must come within the scope of the "residual hearsay exception" provided by Fed.R.Evid. 803(24) and 804(b)(5).[2] This exception is not to be used as a new and broad hearsay exception, but rather is to be used rarely and in exceptional circumstances. *United States v. Kim*, 595 F.2d 755, 765 (D.C.Cir.1979). To admit a statement under the residual exception, the trial court must find the existence of five factors.[3] Most importantly, the statement must have circumstantial guarantees of trustworthiness equivalent to those present in the traditional exceptions to the hearsay rule. *United States v. Hoyos*, 573 F.2d 1111, 1116 (9th Cir. 1978); *United States v. Mathis*, 559 F.2d 294, 298 (5th Cir. 1977).

The traditional exceptions to the hearsay rule depend for their support on circumstances such as belief of impending death, high degree of excitement, dependable written records, and so on, each of which tends to support otherwise untrustworthy hearsay evidence. The secretary's statement does not fit into one of these established categories, nor does it share any of their circumstantial guarantees of trustworthiness. It is run-of-the-mill hearsay.

Affirmed.

---

**2.** Rule 803 provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(24) Other exceptions—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Rule 804(b)(5) is worded identically to 803(24) but applies where the declarant is unavailable as a witness.

**3.** In order for evidence to be admitted pursuant to Rule 803(24), five conditions must be met. These are:

(1) The proponent of the evidence must give the adverse party the notice specified within the rule.

(2) The statement must have circumstantial guarantees of trustworthiness equivalent to the 23 specified exceptions listed in Rule 803.

(3) The statement must be offered as evidence of a material fact.

(4) The statement must be more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts.

(5) The general purposes of the Federal Rules and the interests of justice must best be served by admission of the statement into evidence.

*See United States v. Mathis*, 559 F.2d 294, 298 (5th Cir. 1977); *see also* 4 Weinstein's Evidence ¶¶ 803—286–97, 804—122–41 (1979); *Huff v. White Motor Corp.*, 609 F.2d 286 (7th Cir. 1979).