**Robert GALLOWAY, Jr., Plaintiff,**

**v.**

**UNITED PARCEL SERVICE, INC., Defendant.**

**Civ. A. No. 84–0147.**

United States District Court, M.D. Pennsylvania.

Nov. 20, 1984.

[redacted]

Spero T. Lappas, Harrisburg, Pa., for plaintiff.

Martin Wald, Frank C. Sabatino, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant United Parcel Service.

## MEMORANDUM

CALDWELL, District Judge.

### I. Introduction

Before the court is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons contained herein, the motion is granted.

### II. Background

The uncontroverted facts in this case indicate that Robert Galloway, Jr., the plaintiff, was employed by defendant United Parcel Service (UPS) at its Harrisburg facility from August, 1973, to October, 1980, at which time plaintiff was discharged. Defendant has maintained that plaintiff's discharge was grounded in his arrest on May 31, 1980, on various charges that ultimately resulted in his plea of guilty on October 29, 1980, to loitering, prowling, and resisting arrest. Plaintiff was suspended from employment between June 4 and June 17, 1980, and after he was sentenced to six to twenty months in prison to

commence immediately upon his guilty plea, he was discharged on October 31, 1980.

The current action was filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000–5e, *et seq.*, and plaintiff alleges that he was discharged from his employment with UPS on the basis of his race. Galloway contends that defendant UPS treated another employee differently because of race and avers that while that employee was incarcerated, he was on work release and worked at the defendant's facility.

Depositions have been taken of plaintiff Galloway and three UPS supervisors, Robert C. Allison, Willie James Kelly and Dannie William DeBiase. In addition, UPS has answered written interrogatories and a request for the production of documents.

III. The Summary Judgment Motion

The standard for granting summary judgment is contained in Federal Rule of Civil Procedure 56(c), which provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In ruling on a motion for summary judgment, the court's duty is to view facts contained in the moving party's materials in the light most favorable to the party opposing the motion. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142, 155 (1970).

In discrimination cases, summary judgment for defendants is seldom granted.
> Courts are reluctant to dismiss by summary judgment Title VII discrimination suits where, as in antitrust actions, motive and intent are crucial elements and the proof is in the hands of the alleged wrongdoers.

*Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 759 (9th Cir.1980). Nevertheless, "the fact that motive is often the critical issue in employment discrimination cases does not mean that summary judgment is *never* an appropriate vehicle for resolution." *International Woodworkers of America, AFL–CIO, CLC v. Chesapeake Bay Plywood Corporation*, 659 F.2d 1259, 1272 (1981) (emphasis in original).

To maintain a discrimination action under Title VII, the plaintiff must first prove a prima facie case of disparate treatment. If the proof is successful, the burden shifts to the defendant employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 215 (1981), *quoting McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Finally, should the defendant carry this burden, the plaintiff must then be given an opportunity to prove that defendant's legitimate reasons were a pretext for discrimination, and not its true reasons. *Id. See also Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77, 79–80 (3d Cir.1983).

Throughout the action, only the burden of production shifts. The burden of persuasion remains with plaintiff. *Behring International, Inc. v. NLRB*, 675 F.2d 83, 89 (Fed.Cir.1982). *See also Reichman v. Bureau of Affirmative Action*, 536 F.Supp. 1149 (M.D.Pa.1982), which adopts the *McDonnell Douglas* (and thus the *Burdine*) model to a case of employment termination: "The facts necessary to establish a prima facie case of racial discrimination are flexible in Title VII cases and will vary to reflect the differing circumstances of each situation." 536 F.Supp. at 1171.

Viewing the record before us, we cannot perceive how Galloway could satisfy his burden as set forth in the relevant decisions and make out a prima facie case of disparate treatment. Plaintiff's sole claim is that a white employee, one Finsterbush, was permitted to continue in his employment while incarcerated, but that Galloway was not. However, the record

shows that Finsterbush was incarcerated in 1976 for thirty days and missed only one day of work.[1] In contrast is Galloway's incarceration for a period of six months. A four-year interval between the incidents, coupled with the difference in sentences compels our conclusion that the two incidents are unrelated and do not show a discriminatory pattern or purpose in defendant's termination practices. In addition, Galloway's case can also be distinguished by a customer complaint arising from the adverse publicity generated by Galloway's arrest.

Moreover, even if plaintiff has somehow made out a prima facie case of disparate treatment, the employer has given legitimate reasons for terminating Galloway's employment, which the plaintiff has failed to rebut. The first reason is Galloway's failure to comply with the UPS call-in procedure to report his absence from work on June 2–3, 1980, to his immediate supervisor, a violation that Galloway does not dispute. A second reason advanced by UPS for Galloway's discharge is the employer's policy not to allow an incarcerated employee to remain employed while in jail. It is disputed whether UPS knew of Finsterbush's incarceration; however, even if it did not, Finsterbush did not violate the company's call-in rules, nor did he miss work as a result of his incarceration, as did Galloway.

A number of courts have held that an employee's termination was for a valid, nondiscriminatory reason in fact situations similar to the present case. *See, e.g., Garner v. St. Louis Southwestern Ry. Co.*, 676 F.2d 1223 (8th Cir.1982) (discharge for damage to company's reputation and arrest for rape does not violate Title VII of Civil Rights Act) and *Boner v. Board of Commissioners of Little Rock Municipal Water Works*, 674 F.2d 693 (8th Cir.1982) (disparate treatment of a white and a black employee nondiscriminatory because of their different work records). It is inconceivable to us that an employer engaged in the business of handling private property entrusted to it for shipment may not discharge an employee convicted of Galloway's crimes, and who additionally violated company policy regarding absence from work.

The case of *Fong v. American Airlines, Inc.*, 626 F.2d 759, 761–62 (9th Cir.1980), discussed the applicability of summary judgment to a situation in which a plaintiff employee failed to make out a prima facie case of discrimination and concluded that, since the plaintiff "failed to produce evidence sufficient to support a finding that caucasions, under similar circumstances, were treated more leniently than plaintiff, warranting an inference of a racially discriminatory motive for the discharge, summary judgment was proper. *Id.* at 762. *See also Aquamina v. Eastern Airlines, Inc.*, 644 F.2d 506, (5th Cir.1981). We find this reasoning persuasive and directly applicable to the matter before us.

IV.   Conclusion

Based on our review of the record, including depositions, documents, and answers to interrogatories, we conclude that no genuine issue of material fact exists and that summary judgment for UPS is therefore appropriate. Galloway has failed to make out a prima facie case of discriminatory discharge and to rebut the employer's legitimate, nondiscriminatory reasons for plaintiff's termination. An appropriate order will be entered.

---

1. Finsterbush was placed on some type of work release program. Although there is a dispute whether UPS was aware of this arrangement, it is undisputed that no such program was established for Galloway.